```
          UNITED STATES DISTRICT COURT FOR THE
             MIDDLE DISTRICT OF PENNSYLVANIA

ELI CRAWFORD                     :
                                 :
        Petitioner               :
     vs.                         :    CIVIL NO. 1:CV-04-2819
                                 :
JOSEPH V. SMITH,                 :    (Judge Caldwell)
                                 :
        Respondent.              :
                                 :
```

M E M O R A N D U M

I.    Introduction

The Petitioner, Eli Crawford, an inmate at USP-Lewisburg, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc.1). He has also filed an application to proceed in forma pauperis and a motion for appointment of counsel. (Docs. 2 & 7). In his petition, he claims that the United States Parole Commission (USPC) erred in revoking his parole. Specifically, he argues that the drug test the USPC used to detect cocaine in his system, a sweat patch, is unreliable and that the USPC may have also based its revocation decision on the presence of drugs in his system for which he had valid prescriptions. Further, he contends that his medical condition, Hepatitis C, has resulted in extremely poor health and extensive medical needs which constitute mitigating circumstances and justify his release.

II.     Background

On July 29, 1977, the Petitioner was sentenced to twenty-five-years imprisonment for armed robbery of a post office in violation of 18 U.S.C. § 2114.  Crawford was most recently paroled on September 3, 2002, and was to remain under supervision until May 5, 2006.  (Doc. 9, Gov. Resp. Ex. 2). Following a combined preliminary interview/local revocation hearing, however, the USPC issued a decision revoking the petitioner's parole on June 22, 2004. (*Id.*, Ex. 7)

On at least one occasion prior to his parole being revoked (November 6, 2003), the petitioner was issued a letter of reprimand for the "Use of Dangerous and Habit Forming Drugs (Cocaine)."  (*Id.*, Ex. 3).  On February 12, 2004, Jennifer Nelson, the United States Probation Officer supervising Crawford's parole, sent a letter to the USPC to inform the Commission of numerous parole violations committed by the petitioner.  First, she detailed the following sweat patch testing results:

> September 5-11, 2003, Benzoylecgonine (a cocaine metabolite)
> September 11-15, 2003, Benzoylecgonine
> September 15-22, 2003, Benzoylecgonine and Cocaine.

(*Id.*, Ex. 4).  She also detailed the following urinalysis results:

> September 12, 2003, THC

```
          September 25, 2003, THC
          October 6, 2003, THC and Cocaine
          October 10, 2003, THC
          October 17, 2003, THC
          October 28, 2003, THC, Hydromorphone, and Hydrocodone
          November 7, 2003, THC and Hydrocodone
          November 12, 2003, THC, Morphine, Hydromorphone,
          and Hydrocodone
          December 4, 2003, THC and Hydromorphone
          December 9, 2003, THC
          December 19, 2003, THC
          January 9, 2004, Marijuana Metabolite
          January 14, 2004, Marijuana Metabolite and
          Hydrocodone
          January 23, 2004, Marijuana Metabolite and Cocaine.
```

(*Id.*)   Finally, Probation Officer Nelson submitted the following dates on which the Petitioner failed to report for drug testing:

```
          November 26, 2003
          December 16, 2003
          December 24, 2003
          February 4, 2004.
```

(*Id.*).

As a result of Probation Officer Nelson's letter, the USPC issued a warrant on February 26, 2004, charging the Petitioner with two separate parole violations: (1) Use of Dangerous and Habit Forming Drugs; and (2) Violation of Special Condition [of parole].(*Id.*, Ex. 5).  The decision to revole petitioner's parole was issued on June 22, 2004. (*Id.*, Ex. 7) and  the decision was upheld by the USPC's National Appeals Board on October 13, 2004.  (*Id.*, Ex. 9).

-3-

III. <u>Discussion</u>

    A. <u>Appointment of Counsel</u>

The Petitioner argues that, in the interest of justice, we should appoint counsel to assist him because of his poor health. There is no constitutional right to counsel in postconviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539, 545-46 (1987); *United States v. Essig*, 10 F.3d 968, 974 n.18 (3d Cir. 1993); *Reese v. Fulcomer*, 946 F.2d 247, 263 (3d Cir. 1991). Appointment of counsel in those circumstances is governed by 18 U.S.C. § 3006A. Section 3006A(a)(2)(B) permits the court to appoint counsel in 2241 proceedings when "the interests of justice so require."

In deciding whether to appoint counsel, courts must first decide whether the motion is frivolous and whether appointment would benefit the defendant and the court. *Reese*, 946 F.2d at 263-64. The court should also consider "the complexity of the factual and legal issues in the case, as well as the pro se petitioner's ability to investigate facts and present claims." *Id.* at 264; *see also Blasi v. Attorney General*, 30 F. Supp. 2d 481, 489 (M.D. Pa. 1998); *Watson v.*

-4-

*United States*, 1997 WL 667152 at *4 (E.D. Pa.); *Biggins v. Snyder*, 2001 WL 125337 at *2-3 (D. Del.).[1]

Under this standard, we will deny the motion for appointment of counsel. We have reviewed the legal issues presented and conclude that they are sufficiently clear that they can be resolved without appointment of counsel.

B. 2241 Petition

"The role of judicial review of a [USPC] decision on application for a writ of habeas corpus is to insure that the Board has followed criteria appropriate, rational and consistent with the statute and that its decision is not arbitrary and capricious, nor based on impermissible considerations." *Zannino v. Arnold*, 531 F.2d 687, 690 (3d Cir. 1976). Thus, the district court can look at the evidence considered by the USPC in making its decision. *Id.* at 691. This does not mean, however, that the court should engage in weighing the evidence relied upon by the USPC. *Gambino v. Morris*, 134 F.3d 156, 161 (3d Cir. 1998). "The inquiry is not whether the [USPC] is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the

---

[1] Factors for appointment of counsel in a civil case under *Tabron v. Grace*, 6 F.3d 147 (3d Cir. 1993), may also be considered. *Blasi*, 30 F. Supp. 2d at 489; *Biggins*, 2001 WL 125337 at *3.

record for the [USPC's] conclusions embodied in its statement of reasons." *Zannino*, 531 F.2d at 691; *Campbell v. United States Parole Commission*, 704, F.2d 106, 110 (3d Cir. 1983); *Williams v. United States Parole Commission*, 617 F. Supp. 470, 472 (M.D.Pa. 1985). The court cannot "substitute its judgment for that of Commission...unless the Commission's exercise of discretion represents an egregious departure from rational decision-making." *Muhammad v. Mendez*, 200 F. Supp. 2d 466, 473 (M.D.Pa. 2002).

Crawford raises the following issues in his petition: (1) that the sweat patch tests used by the USPC to detect the presence of cocaine and cocaine metabolites in his system are unreliable; (2) that the USPC could not rely on his marijuana use to revoke parole because he had a valid prescription for medicinal marijuana; (3) that he had a valid prescription for hydromorphone, hydrocodone, and morphine and the USPC could not use his positive test results for those substances to revoke his parole; and (4) that his health condition is a mitigating circumstance that warrants his release.[2]

---

[2] In his memorandum in support of his petition, Crawford also addresses his rehabilitation under the heading "Grounds Five and Six Summary Argument(s) Consolidated." However, his petition (doc. 1) only lists four grounds for consideration.

### i. Drug Use

Crawford's first three claims address the USPC's finding that he used dangerous and habit forming drugs. The Petitioner maintains that the unreliability of the sweat patch tests and the prescriptions that he was given for the other drugs demonstrate that a rational basis did not exist for the USPC's revocation decision. Respondent argues that the three positive sweat tests and the Petitioner's reported admission to smoking and eating illicit marijuana, after he was told to only use the synthetic marijuana, provide the rational basis needed to support the USPC's decision.

As an initial matter, we must address the Petitioner's underlying contention that it is not possible to determine the basis for the USPC's finding that he used dangerous and habit forming drugs. The USPC's Notice of Action dated June 22, 2004, lists Probation Officer Nelson's February 12, 2004, report and the corresponding lab reports as the basis for its finding that the petitioner used dangerous and habit forming drugs. (Doc. 9, Gov. Resp. Ex. 7). We agree with the Petitioner that the stated reason for revocation does not allow one to determine which drugs he was found to have used. However, Crawford took an appeal to the National Appeals Board. The Appeals Board decision elaborates on the USPC's reasons for revocation. The

Appeals Board found that Crawford had violated his parole conditions by using cocaine and marijuana.[3] (Id., Ex. 9). Therefore, we conclude that the USPC's basis for finding that the Petitioner used dangerous and habit forming drugs is clear from Appeals Board decision.

In finding that Crawford had used cocaine, the Appeals Board rejected his contention that sweat patch tests are unreliable. While the Appeals Board did not give a detailed explanation as to why it found Petitioner's argument to be without merit, the decision can be upheld if "[the board's] path may reasonably be discerned." *Marshall v. Lansing*, 839 F.2d 933, 945 (3d Cir 1988)(citation omitted).

The record reflects that at the revocation hearing, the Petitioner offered the following in support of his contention that sweat patch tests are unreliable: (1) that he was exposed to cocaine in his work and home environments (specifically that he was a drug counselor and that his daughter used cocaine at his home while she cared for him); (2) that a judge in the Northern District of New York has found a sweat patch test to be unreliable where a subject was exposed to

---

[3] We also note that the Appeals Board also found that Crawford had violated his parole by failing to comply with required drug testing. Crawford, however, does not contest this issue in his petition.

-8-

cocaine at home and the subject sweat profusely during the day leading to the possibility of contamination; (3) that Petitioner's health problems cause him to sweat profusely; (4) that two districts (Northern New York and Nevada) do not rely on sweat patch tests to revoke supervised or pre-trial release; and (5) that his past drug abuse had involved heroin, not cocaine. (Doc. 9, Gov. Resp. Ex. 6).  It also appears that Crawford included three studies regarding the possibility of sweat patch contamination in his appeal of the revocation decision. (*Id.*, Ex. 8).  However, it is not clear if these were presented at the revocation hearing.

     While it appears that Petitioner presented at least some evidence contesting the reliability of sweat patch test to the USPC, our review of the revocation is limited to whether a reasonable basis existed for the revocation decision.  The Appeals Board indicated in its decision that its determination of cocaine usage was based on a review of the record before it. (*Id.*, Ex. 9).  The record before the Board included not only the three positive sweat patch tests and Crawford's arguments regarding the reliability of those tests, but it also included two cocaine-positive urinalysis tests. (*Id.*, Ex. 4).  Although Crawford contested the reliability of the sweat patch tests, we cannot find that it was irrational for the Appeals Board to find

that the sweat patch tests were reliable, and thus that Petitioner had violated a condition of release, since he also had subsequent positive urinalysis tests.[4]

We also cannot find that the Appeals Board lacked a rational basis when it found that Crawford had violated his parole by using illegal marijuana.  There does not appear to be any dispute as to the validity of the Petitioner's claim that he had a prescription for medical marijuana.  The Appeals Board made it clear, however, that its conclusion was based on the fact that the Petitioner was told by Probation Officer Nelson that he should use a synthetic form of marijuana, Marinol, and discontinue his use of illegal marijuana or his parole may be revoked.  (*Id.*, Ex. 9).  It is clear from Crawford's habeas petition that he does not deny that he continued to use illegal marijuana.  We cannot say that the basis for finding illegal marijuana use was irrational given that he was warned as to the potential consequences of continued use, regardless of his prescription, and that the probation officer worked with him to find alternative treatments.

Finally, with regard to the USPC's drug use findings, Crawford argues that the USPC could not rely on his use of

---

[4] We note that the positive sweat patch tests occurred in September 2003, and the positive urinalysis tests were in October 2003, and January 2004.  (Doc. 9, Gov. Resp. Ex. 4).

hydromorphone, hydrocodone, and morphine to revoke his parole as he had prescriptions for them.  However, the Appeals Board decision makes it clear that its finding of his use of dangerous and habit forming drugs was based on cocaine and marijuana.  Therefore, we reject the Petitioner's argument based on his prescriptions for hydromorphone, hydrocodone, and morphine.

    ii.  <u>Health</u>

The Petitioner's final claim is that his extraordinary health problems warrant his release on parole and that we should compel the USPC to reverse its decision.  We must agree with the respondent, however, that we do not have the authority to order the Petitioner to be paroled.  *Zannino*, 531 F.2d at 692.  The USPC was fully aware of Crawford's health conditions when it revoked his parole and it was not irrational, given the determination that he had used drugs and failed to report for scheduled drug testing, for the USPC to conclude that parole should be revoked despite Petitioner's ailments.

    We will enter an appropriate order.

    <u>/s/William W. Caldwell</u>
    William W. Caldwell
    United States District Judge

Date: June 10, 2005

```
           UNITED STATES DISTRICT COURT FOR THE
              MIDDLE DISTRICT OF PENNSYLVANIA

ELI CRAWFORD                    :
                                :
            Petitioner          :
                                :   CIVIL NO. 1:CV-04-2819
        vs.                     :
                                :   (Judge Caldwell)
JOSEPH V. SMITH,                :
                                :
            Respondent.         :
```

O R D E R

AND NOW, this 10th day of June, 2005, it is ordered that:

    1. Petitioner's application to proceed in forma pauperis (doc. 2) is granted.

    2. Petitioner's motion for appointment of counsel (doc. 7) is denied.

    3. The petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (doc. 1) is denied.

    4. The Clerk of Court shall close this file.

                                              /s/William W. Caldwell
                                              William W. Caldwell
                                              United States District Judge